## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**RAMON FISHER,**                                    )
**Individually and as Father**                       )
**and Next Friend of Minor, K.F.**                   )
                                                     )
                              **Plaintiff,**          )
                                                     )          **CIVIL ACTION**
**v.**                                                )
                                                     )          **No. 07-2154-KHV**
**LANDEE LYNCH, et al.**                              )
                                                     )
                              **Defendants.**          )
_____)

### MEMORANDUM AND ORDER

Ramon Fisher, *pro se*, brings suit against Landee Lynch, NEK-CAP Headstart ("Headstart"),

NEK-CAP, Inc. ("NEK-CAP"), Deb Davis, Joyce Immenschuh, Cecelia T. Mariani, Kristie D.

McDougal-Fisher and John Does one through ten.  Plaintiff alleges that (1) under 42 U.S.C. 1983,

Mariani, McDougal-Fisher and Lynch caused the District Court of Jackson County, Kansas to enter an

unlawful ex parte child custody order in violation of his First and Fourteenth Amendment rights and the

First, Fourth and Fourteenth Amendment rights of his daughter K.F. (Count I); (2) under 42 U.S.C.

1985, Mariani and Lynch conspired through their official powers to deprive him of parental rights in

violation of the First and Fourteenth Amendments (Count II); (3) under Kansas law, Immenschuh

defamed him (Count III); and (4) under Section 1983, Lynch, Davis, Headstart and NEK-CAP prevented

him from removing his daughter from daycare and created a condition of involuntary servitude in

violation of the First, Fourth, Thirteenth and Fourteenth Amendments (Count IV).  This matter comes

before the Court on Plaintiff's Motion To Establish Preliminary Injunction (Doc. #10) filed June 21,

2007.  For reasons stated below, the Court overrules the motion.[1]

## Legal Standards

The purpose of a preliminary injunction is "to preserve the status quo pending the outcome of the case." Tri-State Generation & Transmission Ass'n., Inc. v. Shoshone River Power, Inc., 805 F.2d 351, 355 (10th Cir. 1986).  Because a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal.  Schrier v. Univ. of Colo., 427 F.3d 1253, 1258 (10th Cir. 2005). To obtain a preliminary injunction, plaintiff must establish that (1) he will suffer irreparable injury unless the preliminary injunction issues; (2) the threatened injury outweighs whatever damage the proposed preliminary injunction may cause defendants; (3) the preliminary injunction, if issued, will not be adverse to the public interest; and (4) there is a substantial likelihood that he will eventually prevail on the merits of his claims.  Heideman v. S. Salt Lake City, 348 F.3d 1182, 1188 (10th Cir. 2003).

## Findings Of Fact

Plaintiff and Kristie McDougal-Fisher are the parents of K.F., a minor, and are currently engaged in a child custody proceeding in the District Court of Jackson County, Kansas (the "District Court"). On May 7, 2007, Landee Lynch, acting as a domestic case manager for the District Court, made recommendations to the District Court regarding K.F.  See Case Manager Recommendations, attached

---

[1]      Plaintiff does not request oral argument, and he is apparently content to resolve the motion on the existing record.  See Plaintiff's Motion To Establish Preliminary Injunction (Doc. #10) at 6 (arguing that "[a]lthough a hearing is generally required on a properly supported motion for preliminary injunction, oral argument and testimony are not required in all cases.").  In its discretion, the Court declines to conduct an evidentiary hearing and will decide the motion on the existing record. See Reynolds & Reynolds Co. v. Eaves, 149 F.3d 1191 (Table), 1998 WL 339465, at *3 (10th Cir. June 10, 1998) (nothing in Tenth Circuit authority requires evidentiary hearing before grant or denial of motion for preliminary injunction).

as Exhibit A to <u>Plaintiff's Motion To Establish Preliminary Injunction</u> (Doc. #10). In her case manager recommendations, Lynch described K.F.'s attendance at the NEK-CAP daycare, a federally-funded child care program which K.F. attends for free so long as she meets mandatory attendance hours. <u>See id.</u> at 1. Lynch also described the parenting time agreement between plaintiff and McDougal-Fisher which was specifically created to let K.F. meet the NEK-CAP attendance requirements, which both parents signed and which the District Court adopted. <u>See id.</u> In her recommendations, Lynch reported that on May 4, 2007, plaintiff did not take K.F. to the NEK-CAP daycare as outlined in the parenting time agreement – apparently because he believed it was better for K.F. to be with him than at daycare. <u>See id.</u> Before making her case manager recommendations on May 7, 2007, Lynch attempted to contact plaintiff regarding K.F.'s attendance at daycare, but plaintiff did not return her telephone call. <u>See id.</u> Lynch concluded as follows:

> [Plaintiff] has repeatedly broken the court orders in this case and he refuses to participate in the case management process. He has made numerous allegations that [K.F.] had been abused or neglected in some vague way by [McDougal-Fisher], the daycare, or an unknown person. . . . [Plaintiff's] fantastic and unsubstantiated claims continue despite [K.F.'s] individual therapist and medical personnel saying there is no evidence of abuse. [Plaintiff's] unrelenting belief that [K.F.] is "at risk" with everyone, other than him or his wife, is disturbing.

<u>See id.</u> at 2.

Based on her findings, Lynch made the following case management recommendations to the District Court:

1.      [Plaintiff's] parenting time will be modified. He will have parenting time every Tuesday from 6:00 p.m. until Wednesday at 4:45 p.m. and every other Thursday from 6:00 p.m. until Sunday at 5:00 p.m. The parenting exchange site, for all exchanges, will be the Jackson County Sheriff's office on 75 Hwy.

2.      [Plaintiff] will not be allowed to pick [K.F.] up from the NekCap daycare facility effective immediately.

3.      [K.F.] can begin attending a private licensed daycare in Holton, Kids Campus (owned and operated by Debbie Reichle) if [plaintiff] incurs 100% of the cost. [Plaintiff] will need to sign the payment contract with the daycare and provide a copy of this document to [McDougal-Fisher] and the case manager by May 15, 2007, if he wants to change [K.F.'s] daycare.

4.      [Plaintiff] has been assessed 100% of the case management fees resulting from his failure to follow court orders or case management directives as outlined in the case management order.  [Plaintiff] currently owes $636.52 in case management fees.  He will need to pay his outstanding balance by May 27, 2007.

5.      [Plaintiff] will enter into an individual therapy process with Court or case manager approved licensed therapist.  He will begin this process by the end of May 2007.

See id. at 2-3.  The case manager recommendations provided that they would "become orders of the Court, unless written objection is received within 10 days from this date."[2]  See id. at 1.

In his motion for preliminary injunction, plaintiff argues that Lynch acted unreasonably in making her recommendations.  On due process grounds, plaintiff challenges the Kansas statutory scheme which governs child custody case management as impermissibly vague and overbroad.  Plaintiff requests a preliminary injunction which would (1) order defendants "to cease and desist from issuing any orders, or '*case manager recommendations*' against Plaintiff, or against Plaintiff's minor child K.F. age 4, as any such orders would not be in the best interest, and would harm the minor child Plaintiff"; (2) restore his "fundamental rights of parental liberty and association, allowing Plaintiff to exercise his parental rights at any time which does not encroach upon, or invade the legally ordered parenting time of the other parent"; (3) order NEK-CAP and Davis to let plaintiff visit the daycare facility whenever K.F. is in attendance or, in the alternative, discharge K.F.; and (4) reinstate and return plaintiff's parenting time "to the status as it existed prior to the retaliatory and discriminatory orders,

_____

[2]      The record does not reveal whether plaintiff filed any objection to the recommendations.  Presumably they became the order of the District Court on May 17, 2007.

('*recommendations*') issued and executed by Defendant Lynch on May 7, 2007."

### Legal Conclusions

As noted above, to obtain a preliminary injunction, plaintiff must show (1) irreparable harm, (2) a balance of hardships in his favor, (3) conformity with public interest, and (4) a substantial likelihood of success on the merits.  See Heideman, 348 F.3d at 1188

## I.    Irreparable Harm

To constitute irreparable harm, an injury must be certain, great, actual and not theoretical; it may not be merely serious or substantial.  Id. at 1189 (citing Prairie Band of Potawatomi Indians v. Pierce, 253 F.3d 1234, 1250 (10th Cir. 2001)).  The injury complained of must be "of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm."  Schrier, 427 F.3d at 1267.

Here, plaintiff complains of present injury in the form of reduced visitation due to Lynch's recommendations of May 7, 2007, and potential future injury from additional case manager recommendations.  In terms of present injury, the Court notes that Lynch's recommendations did not strip plaintiff of constitutionally-protected custodial rights; they simply modified those rights by decreasing plaintiff's visitation with K.F.  Plaintiff does not disclose what visitation he enjoyed prior to the challenged recommendations.  Therefore, the Court cannot measure the amount of irreparable harm (if any) which plaintiff will sustain if Lynch's recommendations remain in effect.  To the extent that plaintiff complains of future case manager recommendations, he has not shown a significant risk of unlawful recommendations.  Thus, the potential harm stemming from such recommendations is speculative at best and will not support a finding of irreparable injury.  See Greater Yellowstone Coalition v. Flowers, 321 F.3d 1250, 1258 (10th Cir. 2003) (plaintiff must show at least significant risk of harm before injury qualifies as irreparable).

Although plaintiff complains of a constitutional injury which is generally afforded a presumption of irreparable harm, the question of irreparable harm in this case will ultimately turn on the Court's determination of plaintiff's likelihood of success on the merits.  See Free Speech Coalition, Inc. v. Shurtleff, No. 2:05CV949DAK, 2007 WL 922247, at *18 (D. Utah Mar. 23, 2007) (citing Heideman, 348 F.3d at 1190) (court must consider merits of constitutional claim when evaluating whether presumption of irreparable harm applies); Butler v. Nat'l Collegiate Athletic Ass'n, No. 06-2319-KHV, 2006 WL 2398683, at *4 (D. Kan. Aug. 15, 2006) (citing Schrier, 427 F.3d at 1266) (where plaintiff fails to demonstrate likelihood of success on merits, not entitled to presumption of irreparable injury on constitutional claim); Oltremari v. Kan. Soc. & Rehabilitative Serv., 871 F. Supp. 1331, 1361 (D. Kan. 1994) (unless conducted in bad faith or patently unconstitutional, custody determinations do not pose great, immediate and irreparable harm).  Given the Court's finding (set forth below) that plaintiff has not demonstrated a substantial likelihood of success on the merits, irreparable harm does not weigh clearly in plaintiff's favor.

## II.     Balance Of Hardships

This element requires plaintiff to show that his threatened injury outweighs the injury to other parties under the preliminary injunction.  Heideman, 348 F.3d at 1190 (citing Kikumura v. Hurley, 242 F.3d 950, 955 (10th Cir. 2001)).  Absent a preliminary injunction, Lynch's recommendations will remain effective to reduce plaintiff's visitation with K.F.  As noted above, the Court is unable to quantify this reduction in visitation, and any harm is uncertain.  Conversely, the requested injunctive relief would effectively grind to a halt the District Court child custody services with regard to plaintiff and McDougal-Fisher by setting aside case management recommendations and court orders, and enjoining case managers from issuing further recommendations.  See Shurtleff, 2007 WL 922247, at *18

(postponing enforcement of law is injury which weighs in favor of defendants).  The preliminary injunction would also result in a directly proportional loss of parenting time to McDougal-Fisher.  Given these competing hardships, the balance of hardships does not weigh clearly in plaintiff's favor.

**III.    Public Interest**

Under this element, plaintiff must demonstrate that the injunction, if issued, is not adverse to the public interest.  <u>Heideman</u>, 348 F.3d at 1189 (citing <u>Kikumura</u>, 242 F.3d at 955).  The Kansas legislature has expressed the public's interest in child custody matters as follows:

> It shall be the public policy of this state that parents shall retain the fundamental right to exercise primary control over the care and upbringing of their children in their charge. It is further the public policy of this state that children shall have the right to protection from abuse and neglect.

K.S.A. § 38-141(b).  In one sense, the preliminary injunction will arguably boost plaintiff's parental involvement, in quantity if not in quality, thereby promoting the public policy expressed in Section 38-141(b) that parents should act as primary caregivers of their children.  Because K.F.'s parents share custody, however, and the record contains no evidence that they do not jointly exercise primary control over her upbringing, it appears that such public policy is already adequately served.  Moreover, parental rights to the care and custody of children are not beyond regulation by the state in the name of public interest.  <u>See</u> <u>Fields v. Palmdale Sch. Dist.</u>, 427 F.3d 1197, 1204 (9th Cir. 2005) (citing <u>Prince v. Massachusetts</u>, 321 U.S. 158, 166 (1944)) (constitutional rights of parents not without limitation).  As the second sentence of Section 38-141(b) makes clear, the State of Kansas maintains an interest in protecting children from abuse and neglect.  In this regard, the State's child services programs, including the case management process, promote the public policy of protecting children.  To the extent that the preliminary injunction may disrupt the State's child services programs, it risks undermining this public interest.  Given the relatively low public policy benefit which might be generated by the preliminary

injunction, coupled with the risk that the preliminary injunction would impair the State's ability to protect K.F. through its child services programs, the public interest does not weigh clearly in plaintiff's favor.

## IV.   Substantial Likelihood Of Success On The Merits

Where plaintiff demonstrates that each of the first three preliminary injunction factors tip decidedly in his favor, the likelihood of success factor is somewhat relaxed and requires only that plaintiff show questions going to the merits so serious, substantial, difficult and doubtful as to make them a fair ground for litigation. Heideman, 348 F.3d at 1189. Because the first three factors do not tip decidedly in plaintiff's favor, however, the Court will not apply the liberal likelihood of success test.[3]

Here, plaintiff's requested relief asks the Court to become directly involved in the pending child custody proceeding in the District Court. Specifically, plaintiff would have the Court enjoin the District Court case management process and effectively reverse District Court orders and case manager recommendations by ordering that in the best interest of K.F., plaintiff's visitation be increased and he be allowed access to K.F. while she attends daycare. The Supreme Court, however, has clearly stated that "the domestic relations exception . . . divests the federal courts of power to issue divorce, alimony, and child custody decrees." Ankenbrandt v. Richards, 594 U.S. 689, 703 (1992). The Tenth Circuit explains the applicability of the domestic relations exception as follows:

> If the federal court is called upon to decide those issues regularly decided in state court domestic relations actions such as divorce, alimony, child custody, or the support

---

[3]   Even if the first three factors decidedly favored plaintiff, the fair-ground-for-litigation test is inappropriate where the preliminary injunction seeks to stay governmental action taken in the public interest pursuant to a statutory or regulatory scheme. Id. (citing Sweeney v. Bane, 996 F.2d 1384, 1388 (2d Cir. 1993)). Because plaintiff seeks to enjoin Lynch from acting in her capacity as court-appointed case manager pursuant to Kansas law, see K.S.A. §§ 23-1001-1003, the liberal likelihood of success test is not applicable in this case.

obligations of a spouse or parent, then the domestic relations exception is applicable.

Vaughan v. Smithson, 883 F.2d 63, 65 (10th Cir. 1989).  Because the requested injunctive relief would essentially function as a child custody decree, requiring the Court to make determinations as to the best interests of K.F. and the amount of visitation each parent should enjoy, the domestic relations exception prevents the Court from ordering the requested relief.[4]  This apparent lack of jurisdiction forecloses any finding of substantial likelihood of success on the merits.  See Wideman v. Colorado, No. 06-cv-001423-WDM-CBS, 2007 WL 757639, at *9 (D. Colo. Mar. 8, 2007) (where court lacks subject matter jurisdiction, movant cannot show likelihood of success on merits); Bank of N.Y. v. Mehner, 375 F. Supp.2d 1316, 1319 (D.N.M 2005) (substantial issue as to jurisdiction prevents finding necessary likelihood of success on merits).  Having determined that none of the preliminary injunction factors weigh clearly in favor of plaintiff, the Court overrules the motion for preliminary injunction.

   **IT IS THEREFORE ORDERED** that Plaintiff's Motion To Establish Preliminary Injunction (Doc. #10) filed June 21, 2007 be and hereby is **OVERRULED**.

---

   [4]   Although the Court may not entertain plaintiff's invitation to alter the District Court custody proceedings, plaintiff also argues that the state statutes which govern the case management process, see K.S.A. §§ 23-701, 1001-1003, are unconstitutionally vague and overbroad.  The Tenth Circuit holds that a claim which makes a general due process challenge to the constitutionality of a state child custody statutory scheme is not susceptible to the domestic relations exception because the claim would focus on the validity of the statute and would not require the federal court to make a custody determination.  See Johnson v. Rodrigues (Orozco), 226 F.3d 1103, 1111-12 (10th Cir. 2000).  Thus, to the extent that plaintiff asserts a general due process claim challenging Kansas child custody laws, such claim is not barred by the domestic relations exception.

   The Court notes that even though the general constitutional challenge would not run afoul of the domestic relations exception, the claim would not entitle plaintiff to injunctive relief.  Even if the Court were to find the state statutes unconstitutional on due process grounds, such finding would not permit the Court to make any subsequent custody determination.  See id. at 1113 (even if federal court finds state custody law invalid, it may not make any custody ruling through injunctive measures; such matters remain within jurisdiction and expertise of state courts).  In other words, while plaintiff may have a cognizable due process claim, he may not use that claim to procure injunctive relief which is otherwise improper.

Dated this 31st day of July, 2007 at Kansas City, Kansas.

<u>s/ Kathryn H. Vratil</u>
Kathryn H. Vratil
United States District Judge