## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **RAMON FISHER,** | ) | |
| **Individually and as Father** | ) | |
| **and Next Friend of Minor, K.F.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | |
| | ) | **No. 07-2154-KHV** |
| **LANDEE LYNCH, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER AND ORDER TO SHOW CAUSE

Ramon Fisher, *pro se*, brings suit against Cecelia T. Mariani, Kristie D. McDougal-Fisher,[1]

Landee Lynch, Joyce Immenschuh, NEK-CAP Headstart ("Head Start"), NEK-CAP, Inc. ("NEK-

CAP"), Deb Davis and John Does one through ten.  Plaintiff alleges that (1) in violation of 42 U.S.C.

§ 1983, Mariani, McDougal-Fisher and Lynch caused the Jackson County, Kansas District Court to enter

an unlawful ex parte order of direct custody in violation of his First and Fourteenth Amendment rights

and the First, Fourth and Fourteenth Amendment rights of his daughter K.F. (Count I); (2) in violation

of 42 U.S.C. § 1985(3), Mariani and Lynch through their official powers conspired to deprive him of

parental rights in violation of the First and Fourteenth Amendments (Count II); (3) in violation of

Kansas law, Immenschuh defamed him (Count III); and (4) in violation of Section 1983, Lynch, Davis,

NEK-CAP and Head Start prevented him from removing his daughter from daycare and thereby created

a condition of involuntary servitude in violation of the First, Fourth, Thirteenth and Fourteenth

---

[1]        The docket sheet, the complaint and the summons which plaintiff served all name this
defendant as McDougal-Fisher.  In her pleadings, defendant refers to herself as Fisher.  For purposes
of clarity, the Court will refer to this defendant as McDougal-Fisher.

Amendments (Count IV).  This matter comes before the Court on <u>Defendant Mariani's Motion For Judgment On The Pleadings</u> (Doc. #14) filed July 20, 2007, <u>Defendant Kristie D. Fisher's Motion For Judgment On The Pleadings</u> (Doc. #19) filed August 2, 2007, plaintiff's <u>Motion For Entry Of Default Judgment</u> (Doc. #29) filed September 25, 2007, the <u>Motion By Defendant Landee Lynch To Dismiss The Above Cause For Insufficiency Of Process And Insufficiency Of Service Of Process</u> (Doc. #31) filed September 27, 2007, and <u>Defendant Joyce Immenschuh's Motion For Judgment On The Pleadings</u> (Doc. #11) filed July 3, 2007.  For reasons stated below, the Court sustains the motions of Mariani and McDougal-Fisher, sustains Lynch's motion in part, overrules the motions of plaintiff and Immenschuh and orders plaintiff to show good cause in writing why it should not dismiss his conspiracy claim against Lynch and his claims against the John Doe defendants.

### **Legal Standards**

A motion for judgment on the pleadings under Rule 12(c) is governed by the same standards as a motion to dismiss under Rule 12(b)(6).  <u>See</u> <u>Atl. Richfield Co. v. Farm Credit Bank</u>, 226 F.3d 1138, 1160 (10th Cir. 2000); <u>Mock v. T.G. & Y.</u>, 971 F.2d 522, 528 (10th Cir. 1992).  Under Rule 12(b)(6), the Court accepts as true all well-pleaded factual allegations in the complaint and draws all reasonable inferences from those facts in favor of plaintiff.  <u>See</u> <u>Moore v. Guthrie</u>, 438 F.3d 1036, 1039 (10th Cir. 2006).  Rule 12(b)(6) does not require detailed factual allegations, but the complaint must set forth the grounds of plaintiff's entitlement to relief through more than labels, conclusions and a formulaic recitation of the elements of a cause of action.  <u>Bell Atlantic Corp. v. Twombly</u>, 127 S. Ct. 1955, 1964-65 (2007); <u>see also</u> <u>Hall v. Bellmon</u>, 935 F.2d 1106, 1110 (10th Cir. 1991) (plaintiff need not precisely state each element, but must plead minimal factual allegations on those material elements that must be proved).  In other words, plaintiff must allege sufficient facts to state a claim which is plausible

– rather than merely conceivable – on its face. <u>Bell Atlantic Corp.</u>, 127 S. Ct. at 1974. Because plaintiff proceeds *pro se*, the Court will liberally construe his complaint. <u>See</u> <u>Jackson v. Integra Inc.</u>, 952 F.2d 1260, 1261 (10th Cir. 1991).

Rule 12(b)(5) governs motions to dismiss for insufficient service of process. In opposing a motion to dismiss for insufficient service of process, plaintiff bears the burden to make a prima facie case that he has satisfied statutory and due process requirements so as to permit the Court to exercise personal jurisdiction over defendants. <u>See</u> <u>Bernard v. Husky Truck Stop</u>, No. 93-2241-JWL, 1994 WL 171732, at *1 (D. Kan. Apr. 20, 1994), <u>aff'd</u>, 45 F.3d 439 (10th Cir. 1995). The parties may submit affidavits and other documentary evidence for the Court's consideration, and plaintiff is entitled to the benefit of any factual doubt. <u>See</u> <u>id.</u>

### Factual Background

Plaintiff's complaint is summarized as follows:

Plaintiff and Kristie McDougal-Fisher divorced in April of 2004 and are currently engaged in a child custody dispute involving their minor daughter (K.F.) in the District Court of Jackson County, Kansas (the "District Court"). On July 12, 2006, the District Court entered an order of conciliation which appointed Landee Lynch as mediator.

On September 6, 2006, Lynch negotiated with NEK-CAP and Head Start administrator Deb Davis for K.F.'s mandatory daily attendance in the Head Start daycare program. Plaintiff objected to such attendance.

On September 27, 2006, Cecelia Mariani entered her appearance as counsel for McDougal-Fisher in the child custody dispute. Before she entered her appearance, Mariani had several extended telephone conversations with Lynch, who disclosed personal, private and confidential information

regarding the parties' mediation process.  On September 27, 2006, Mariani faxed to plaintiff's counsel a joint case management order which purported to appoint Lynch as case manager and obligate plaintiff to pay all costs associated with the custody dispute.  The proposed case management order contained a memorandum of understanding which approved K.F.'s mandatory attendance in the Head Start daycare program.  Mariani's fax stated that "if [plaintiff] does not agree to enter into Case Management with Landee Lynch by September 28, 2006 I will proceed with an Ex Parte Order to suspend [his] parenting time."  Plaintiff objected to the proposed order on the ground that Lynch had a conflict of interest.

On September 29, 2006, Mariani applied to the District Court for an order of direct custody.[2] The order of direct custody included the sworn testimony of McDougal-Fisher and Lynch, but the testimony contained several relevant omissions and misrepresentations and did not establish any emergency involving plaintiff's daughter.  Lynch knew that the application was defective, but she exercised her decisionmaking and policymaking authority as court-appointed mediator to support the order of direct custody.  The District Court subsequently entered an order of direct custody which summarily suspended plaintiff's parental rights and gave McDougal-Fisher custody of K.F.  Plaintiff did not receive notice of the order.  After the District Court entered the order of direct custody, Lynch refused to let plaintiff visit with K.F. until he agreed to a case management order and memorandum of understanding which limited his parental rights.  Plaintiff alleges that Mariani and Lynch "conspired through legal coercion, manipulation, intimidation, fraud and force and did willingly and willfully participate in joint action under color of law, to secure defendant Lynch as parties['] Case Manager, and

---

[2]     Plaintiff alleges that this application did not comply with Kansas statutory requirements, but he does not specify which statute governs the order of direct custody or exactly how the order failed to meet statutory requirements.

to remove the plaintiff's minor child." <u>Complaint</u> (Doc. #1) filed April 17, 2007 ¶ 42.

Joyce Immenschuh is the office manager of the Jackson County Attorney's office. Since April of 2004, Immenschuh had formed a significant personal and professional relationship with McDougal-Fisher. The two lived together from March of 2004 until December of 2005. On September 29, 2006, Immenschuh stated to the chief of police of Holton, Kansas and the Jackson County Attorney that plaintiff was "on drugs and capable of murder." This false statement was part of a plan to have plaintiff arrested and support the order of direct custody which Mariani had filed that same day.

On December 26, 2006, Head Start administrator Davis refused to let plaintiff see K.F. while she attended daycare.

On May 1, 2007, plaintiff's process server attempted to serve Lynch by placing the summons and complaint "under locked door in [Lynch's] office [at 2858 SW Villa West Dr., Suite 104, Topeka, KS 66614] as per [her] request." <u>Return Of Service</u>, attached as Exhibit 1 to <u>Memorandum In Support Of Motion By Defendant Landee Lynch To Dismiss For Insufficiency Of Process And Insufficiency Of Service Of Process</u> ("<u>Lynch's Memorandum</u>") (Doc. #32) filed September 27, 2007. On June 26, 2007, plaintiff attempted to serve Lynch by certified mail addressed to "2858 Villa West Drive, Ste 104, Topeka, KS 66614." <u>Return Of Service</u>, attached as Exhibit 2 to <u>Lynch's Memorandum</u> (Doc. #32). Sarah Schmidtlein signed for the summons. <u>See</u> <u>id.</u> Schmidtlein was secretary for the landlord at 2858 Villa West Drive, Topeka, KS 66614 and was not authorized to accept service on Lynch's behalf. <u>See Affidavit Of Landee Lynch</u>, attached as Exhibit 3 to <u>Lynch's Memorandum</u> (Doc. #32) ¶ 7. Lynch worked at 2858 Villa West Drive, Ste 104, Topeka, KS 66614 until May 31, 2007; she has never lived there. <u>See id.</u> ¶ 4. On September 27, 2007, Karen W. Renwick entered her appearance on behalf of Lynch, <u>see</u> <u>Limited Entry Of Appearance</u> (Doc. #30), and filed the motion to dismiss.

In Count I, plaintiff claims that in violation of Section 1983, Mariani, McDougal-Fisher and Lynch improperly caused the District Court to enter the ex parte order of direct custody which interfered with his parental rights and the constitutional rights of K.F.  In Count II, plaintiff claims that in violation of Section 1985(3), Mariani and Lynch conspired to violate his constitutional rights through concerted efforts to interfere with his parental rights.  In Count III, plaintiff claims that in violation of Kansas law, Immenschuh defamed him in an attempt to further interfere with his parental rights.[3]  In Count IV, plaintiff claims that in violation of Section 1983, Lynch, Davis, NEK-CAP and Head Start created a condition of involuntary servitude by preventing him from removing K.F. from daycare.[4]  Plaintiff

_____

[3]       Plaintiff does not specify whether his defamation claim arises under federal or state law. Typically, defamation claims arise under state law.  Paragraph 66 of the complaint alleges that Immenschuh's defamatory statements shock the conscience and implies a substantive due process violation.  See County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998) (substantive due process claim alleges "cognizable level of executive abuse of power as that which shocks the conscience"). The Supreme Court, however, has drawn a clear line between mere tortious conduct and conduct which violates the Constitution.   See id. at 848 (Fourteenth Amendment not "font of tort law to be superimposed upon whatever systems may already by administered by the States").  A defamation claim may be actionable under Section 1983 as a due process violation where plaintiff is a former public employee who can show that his or her termination resulted in the publication of information which was false and stigmatizing and which foreclosed his or her freedom to take advantage of other employment opportunities.  See Franklin v. City of Kansas City, 959 F. Supp. 1380, 1385 (D. Kan. 1997).  Such allegations are not before the Court, however, and controlling case law clearly rejects any attempt to transform a basic state law defamation claim into one arising under the Constitution.  See Paul v. Davis, 424 U.S. 693, 710 (1976) (defamation by state official, by itself, not sufficient to establish claim under Section 1983 and Fourteenth Amendment; defamation must occur in course of termination of employment); McCarty v. City of Bartlesville, 8 Fed. Appx. 867, 875 (10th Cir. 2001) (defamation which harms one's reputation actionable under state law but does not rise to level of constitutional violation of protected interest).  The Court therefore declines to construe plaintiff's defamation claim as one arising under federal law.

[4]       Plaintiff identifies the John Doe defendants as "those individuals, and employees of Jackson County, acting in their individual capacities, and acting under color of law . . . who participated in the allegations set forth in this complaint."  Complaint (Doc. #1) ¶ 8.  Although plaintiff may generally plead claims against unknown defendants, he must "provide[] an adequate description of some kind which is sufficient to identify the person involved so process eventually can be served."

(continued...)

asserts jurisdiction under 28 U.S.C. §§ 1331 (federal question), 1343 (civil rights) and 2202 (declaratory judgment).

## Analysis

### I.    Plaintiff's Claims against Mariani

Plaintiff claims that as counsel for McDougal-Fisher in the child custody dispute, Mariani (1) caused the District Court to enter an order of direct custody which violated his First and Fourteenth Amendment rights and the First, Fourth and Fourteenth Amendment rights of K.F., in violation of Section 1983; and (2) conspired with Lynch to interfere with his constitutionally-protected parental rights in violation of Section 1985(3).

### A.    Section 1983

To state a claim under Section 1983, plaintiff must allege that defendant deprived him of a constitutional right and that she acted under color of state law in doing so. See Adickes v. S. H. Kress & Co., 398 U.S. 144, 150 (1970). Mariani argues that she is entitled to judgment on the pleadings because (1) the mere filing of an ex parte order does not give rise to any constitutional violation, and (2) she did not act under color of state law. The Court agrees that plaintiff has not sufficiently alleged that Mariani acted under color of state law.

Traditionally, in order to act under color of state law for purposes of Section 1983, a defendant

---

[4](...continued)

Fisher v. Okla. Dep't of Corr. Unknown State Actor and/or Actors, 213 Fed. Appx. 704, 708 n.2 (10th Cir. 2007) (quoting Roper v. Grayson, 81 F.3d 124, 126 (10th Cir. 1996)). Here, the complaint does not allege with any specificity which claims involve the John Doe defendants or what roles those unknown individuals might have played in this matter. The complaint appears insufficient to allow eventual identification of the John Doe defendants and the Court therefore orders plaintiff to show good cause in writing on or before **February 8, 2008**, why it should not dismiss for failure to state a claim his claims against the John Doe defendants.

must have "exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." How v. City of Baxter Springs, 217 Fed. Appx. 787, 792 (10th Cir. 2007) (quoting West v. Atkins, 487 U.S. 42, 49 (1988)) (internal quotations omitted). Generally, "a lawyer representing a client is not, by virtue of being an officer of the court, a state actor 'under color of state law' within the meaning of [Section] 1983." Polk County v. Dodson, 454 U.S. 312, 318 (1981). A sufficient claim of a conspiracy between a private lawyer and state actors, however, would support the allegation that the private lawyer acted under color of state law. Ellibee v. Fox, 244 Fed. Appx. 839, 843 (10th Cir. 2007) (citing Tower v. Glover, 467 U.S. 914, 920 (1984)). Where plaintiff alleges conduct under color of state law by implicating state officials in a conspiracy with private defendants, "mere conclusory allegations with no supporting factual averments are insufficient; the pleadings must specifically present facts tending to show agreement and concerted action." Raiser v. Kono, 245 Fed. Appx. 732, 736 (10th Cir. 2007) (quoting Sooner Prods. Co. v. McBride, 708 F.2d 510, 512 (10th Cir. 1983)).

To state a claim against Mariani (a private lawyer) under Section 1983, plaintiff must sufficiently allege that she conspired with state officials to violate his constitutional rights and the constitutional rights of K.F. In this regard, the complaint alleges that "[d]efendant Lynch and defendant Mariani conspired through legal coercion, manipulation, intimidation, fraud and force and did willingly and willfully participate in joint action under color of law, to secure defendant Lynch as parties['] Case Manager, and to remove the plaintiff's minor child." Complaint (Doc. #1) ¶ 42. Standing alone, this conclusory allegation is insufficient to allege that Mariani became a state actor by conspiring with Lynch. The only factual allegations which arguably support the conclusory conspiracy allegation are that (1) before Mariani entered her appearance in the case, Lynch and Mariani had "several extended

telephone conversations" and Lynch disclosed to Mariani "personal, private, and confidential information related to the parties['] mediation process," and (2) Mariani filed an application for an ex parte order of direct custody which sought to appoint Lynch as case manager and which contained Lynch's allegedly fraudulent testimony.

Assuming that Lynch – as the court-appointed mediator – is a state actor, these allegations do not tend to show agreement and concerted action between Mariani and Lynch.  To sufficiently allege joint action, the allegations must evidence a "specific goal to violate the plaintiff's constitutional rights by engaging in a particular course of action." Gallagher v. Neil Young Freedom Concert, 49 F.3d 1442, 1455 (10th Cir. 1995).  By themselves, the telephone conversations between Mariani and Lynch do not support an inference of joint action.  See Anderson v. Blake, No. CIV-05-0729-HE, 2005 WL 2716302, at *3 (W.D. Okla. Oct. 21, 2005), aff'd sub nom. Anderson v. Suiters, 499 F.3d 1228 (2007) (existence of multiple contacts between state actor and private party which are not inconsistent with normal interplay does not support inference of joint action); see also Fisk v. Letterman, 401 F. Supp.2d 362, 377 (S.D.N.Y. 2005) (citing Moore v. Marketplace Rest., Inc., 754 F.2d 1336, 1353 (7th Cir. 1985)) (communications between private party and state actor, without facts supporting concerted effort or plan, insufficient to make private party a state actor).  Plaintiff does not allege that in these conversations, Mariani and Lynch agreed to manipulate the child custody proceeding so as to violate his constitutional rights or the constitutional rights of K.F.  Plaintiff's constitutional claims arise out the ex parte order of direct custody, but he does not allege that these conversations somehow enabled Mariani to apply for the order.  In fact, the complaint suggests that Mariani applied for the ex parte order of direct custody because plaintiff refused to agree to case management, not because of anything she learned in conversations with Lynch before she entered her appearance in the case.  See Complaint (Doc. #1) ¶ 37

(Mariani faxed to plaintiff ultimatum that if plaintiff "[did] not agree to enter into Case Management with Landee Lynch by September 28, 2006 [Mariani would] proceed with an Ex Parte Order to suspend [plaintiff's] parenting time").

Furthermore, Mariani's application for the order of direct custody does not support an inference of joint action. See Read v. Klein, 1 Fed. Appx. 866, 871 (10th Cir. 2001) (private party's mere invocation of state legal procedures not joint participation or state action). Plaintiff complains that the application contained fraudulent testimony by Lynch, but he does not allege that Mariani knew that Lynch had lied or that Mariani had otherwise agreed to present false testimony to the District Court.[5] Even assuming that Lynch's testimony contained misrepresentations and/or omissions, the Court finds no authority for the proposition that a private attorney who unknowingly presents the fraudulent testimony of a state actor in a child custody proceeding automatically becomes a joint participant in the alleged fraud and acts under color of state law for purposes of Section 1983. See Dennis v. Sparks, 449 U.S. 24, 27 (1980) (to act under color of state law for purposes of Section 1983, private persons must be willful participants in joint action with state actors). Because plaintiff has not alleged facts which tend to show agreement and concerted action between Mariani and Lynch, he has not sufficiently alleged that Mariani acted under color state law. The Court therefore dismisses plaintiff's claims against Mariani under Section 1983.

---

[5]       In contrast, plaintiff alleges that Lynch knew or should have known of the defects in the application for the order of direct custody. Plaintiff also alleges that Lynch "had the final decision making and policy making authority as it concerned the filing of the Ex Parte Order and Order of Direct Custody." Complaint (Doc. #1) ¶ 22. From these allegations, it appears that plaintiff's claims arise from Lynch's conduct alone, rather than from any concerted effort between Lynch and Mariani which would make Mariani a state actor. See Beedle v. Wilson, 422 F.3d 1059, 1071 (10th Cir. 2005) (allegation that private citizen became state actor insufficient where plaintiff did not allege that private citizen exerted influence over state actor, substituted her judgment for that of state actor or participated in decision to file objectionable lawsuit).

B.    Section 1985(3)

In Count II, plaintiff claims that Mariani conspired with Lynch to interfere with his constitutionally protected parental rights in violation of Section 1985(3). Section 1985(3) prohibits conspiracies "motivated by some racial, or perhaps other class-based, invidiously discriminatory animus." Tilton v. Richardson, 6 F.3d 683, 686 (10th Cir. 1993) (internal quotations omitted). Mariani argues that she is entitled to judgment on the pleadings on Count II because plaintiff has not alleged that she engaged in a class-based conspiracy against him. The Court agrees and dismisses plaintiff's Section 1985(3) claim against Mariani.[6]

## II.    Plaintiff's Claim Against McDougal-Fisher

Plaintiff claims that in violation of Section 1983, McDougal-Fisher caused the District Court to enter an order of direct custody which violated his First and Fourteenth Amendment rights and the First, Fourth and Fourteenth Amendment rights of K.F. McDougal-Fisher argues that she is entitled to judgment on the pleadings because (1) the Court should abstain under Younger v. Harris, 401 U.S. 37 (1971); (2) the mere filing of an ex parte order does not give rise to a constitutional violation; and (3) she did not act under color of state law. The Younger argument is dispositive of plaintiff's claim.

McDougal-Fisher argues that the Court should abstain under Younger because the federal action

---

[6]    Because plaintiff proceeds *pro se*, the Court should reasonably attempt to read the complaint to state a valid claim – if possible – despite plaintiff's failure to cite proper legal authority. Barnett Hargett, 174 F.3d 1128, 1133 (10th Cir. 1999). Under Section 1983, the Tenth Circuit recognizes a claim for civil conspiracy to deprive plaintiff of a constitutional or federally protected right under color of state law. See Dixon v. City of Lawton, 898 F.2d 1443, 1449 n.6 (10th Cir. 1990) (Section 1983 conspiracy claim may arise when private actor conspires with state actor to deprive person of constitutional right under color of state law). Normally, the Court would recast plaintiff's conspiracy claim as one arising under Section 1983. As discussed above, however, plaintiff has not sufficiently alleged any conspiracy between Mariani and Lynch, and the Court therefore will not construe his conspiracy claim under Section 1983.

interferes with the ongoing child custody proceeding in state District Court.  Plaintiff does not make a meaningful response to this argument.[7]  Younger dictates that a federal district court abstain from exercising jurisdiction when (1) a state criminal, civil or administrative proceeding is ongoing; (2) the state court provides an adequate forum to hear the claims raised in the federal complaint; and (3) the state proceedings involve important state interests.  Amanatullah v. Colo. Bd. of Med. Exam'rs, 187 F.3d 1160, 1163 (10th Cir. 1999).

As to the first element – an ongoing state proceeding – a proceeding is considered to be pending if "as of the filing of the federal complaint not all state appellate remedies have been exhausted." Mounkes v. Conklin, 922 F. Supp. 1501, 1511 (D. Kan. 1996).  Here, plaintiff's claims grow out of the state child custody proceeding which remained pending when he filed the complaint in April of 2007. See Exhibit A, attached to Plaintiff's Motion To Establish Preliminary Injunction (Doc. #10) filed June 21, 2007 (case manager recommendations filed with District Court in child custody proceeding on May 7, 2007).[8]  The Court finds that the first Younger element is satisfied.

As to the second element – an adequate state forum in which to raise the federal claims – state courts of general jurisdiction are competent to adjudicate claims invoking federal statutes such as Section 1983.  Nevada v. Hicks, 533 U.S. 353, 366 (2001).  Under Kansas law, district courts are courts

---

[7]     Plaintiff ignores Younger and responds that the domestic relations exception does not bar his claims.  The domestic relations exception concerns subject matter jurisdiction and "divests the federal courts of power to issue divorce, alimony, and child custody decrees."  Ankenbrandt v. Richards, 504 U.S. 689, 703 (1992).  The domestic relations exception and Younger abstention are distinct bases of dismissal, see id. at 704 (finding domestic relations exception inapplicable and proceeding to abstention question), and plaintiff's arguments regarding the domestic relations exception are not helpful to the Court's evaluation of Younger.

[8]     On the motion to dismiss, the Court may take judicial notice of matters of public record – including court documents – without converting the motion into one for summary judgment.  See Erikson v. Farmers Group, Inc., 151 Fed. Appx. 672, 675 (10th Cir. 2005).

of general jurisdiction, see K.S.A. § 20-301, and plaintiff makes no argument why the District Court could not entertain his constitutional claims arising from the child custody proceeding. Where a federal plaintiff has not attempted to present his federal claims in related state court proceedings, "a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary." Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 15 (1987). Further, the Kansas Court of Appeals has entertained due process challenges to district court procedures in child custody matters. See In re D.R.K., 79 P.3d 796 (Table), 2003 WL 22831935, at *2-3 (Kan. Ct. App. Nov. 26, 2003) (considering due process challenge to trial procedure in child custody proceeding); Jones v. Walker, 29 Kan. App.2d 932, 934-45, 33 P.3d 872, 874 (2001) (same). For purposes of Younger, plaintiff's ability to raise his constitutional claims on appeal is sufficient to establish the state court as an adequate forum. See Fisher v. Whetsel, 142 Fed. Appx. 337, 339 (10th Cir. 2005) (ability to raise ineffective assistance of counsel claim on direct appeal creates adequate state forum). The Court finds that the second Younger element is satisfied.[9]

        As to the third element – an important state interest – it is well established that the State of Kansas maintains a significant interest in child custody matters. See Morrow v. Winslow, 94 F.3d 1386, 1393 (10th Cir. 1996) (child custody proceedings especially delicate area of state concern); Alferex ex

---

        [9]        Although plaintiff may assert his constitutional claims in state court, the Court is uncertain whether plaintiff could recover in state court the money damages which he seeks in this case. For purposes of Younger, however, the state court need only be able to rectify the alleged constitutional violation – not necessarily replicate the particular relief sought in federal court. See Weitzel v. Div. of Occupational & Prof'l Licensing of the Dep't of Commerce of the State of Utah, 240 F.3d 871, 876 (10th Cir. 2001) (Younger offers opportunity to obviate constitutional problem and mediate federal constitutional concerns and state interests). Indeed, the Tenth Circuit has extended Younger to Section 1983 claims for money damages which interfere with ongoing state criminal proceedings – where money damages obviously would not be available. See Pettit v. Whetsel, 188 F.3d 519 (Table), 1999 WL 586998, at *2 (10th Cir. Aug. 5, 1999) (citing Parkhurst v. Wyoming, 641 F.2d 775, 777 (10th Cir. 1981)).

rel. Calderon v. Chronister, 41 F. Supp.2d 1238, 1240 (D. Kan. 1999) (disputes concerning child custody traditional area of state concern).  The State of Kansas also maintains an interest in determining the validity of its courts' orders.  See Steffens v. Steffens, 955 F. Supp. 101, 104 n.4 (D. Colo. 1997) (Supreme Court has emphasized importance to states of enforcing orders and judgments of their courts). The Court finds that the third Younger element is satisfied.

Where the three requirements of Younger are satisfied, the Court must abstain unless extraordinary circumstances exist.  Amanatullah, 187 F.3d at 1163.  Younger does not require abstention where the state proceeding is motivated by a desire to harass or is conducted in bad faith, or where a challenged statute is "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whether manner and against whomever an effort might be made to apply it."  Huffman v. Pursue, 420 U.S. 592, 611 (1975) (internal citations omitted).  Although plaintiff argues that due process violations have occurred in the course of the state proceeding, he does not suggest that the proceeding itself is intended to harass him or that the District Court has conducted the proceeding in bad faith.  Nor does plaintiff challenge any state statute as wholly unconstitutional. Because the three Younger elements are satisfied and no exception applies to the facts of this case, the Court finds that abstention under Younger is appropriate and that McDougal-Fisher's motion for judgment on the pleadings should be sustained.  Plaintiff's claims against McDougal-Fisher are dismissed.  See Pettit, 1999 WL 586998, at *2 (although stay of Section 1983 claim for money damages preferred remedy under certain circumstances, Younger calls for dismissal where federal due process claim calls state court decision into question).

Even if the Court chose not to abstain under Younger, it would find that plaintiff has not sufficiently alleged that McDougal-Fisher acted under color of state law for purposes of Section 1983.

-14-

As explained above, a private person is not subject to suit under Section 1983 unless he or she has become a joint participant with a state actor in the alleged constitutional violation.  See Beedle, 422 F.3d at 1071 (private citizen liable under Section 1983 only through willful participation in joint action with state agents).  McDougal-Fisher is a private person and the complaint does not allege that she conspired with any state actor or otherwise became a state actor in the alleged constitutional violations.  The complaint therefore does not state a claim against McDougal-Fisher under Section 1983.

## III.   Plaintiff's Claims Against Lynch

Plaintiff claims that (1) in violation of Section 1983, Lynch caused the District Court to enter an order of direct custody which violated his First and Fourteenth Amendment rights and the First, Fourth and Fourteenth Amendment rights of K.F.; (2) in violation of Section 1985(3), Lynch conspired with Mariani to interfere with his constitutionally-protected parental rights; and (3) in violation of Section 1983, Lynch prevented him from removing K.F. from daycare and thereby created a condition of involuntary servitude in violation of the First, Fourth, Thirteenth and Fourteenth Amendments. Lynch argues that the Court should dismiss plaintiff's claims under Rule 12(b)(5) for insufficient service of process.

Rule 4(e), Fed. R. Civ. P., provides that service may be effected by personal delivery, delivery at the individual's dwelling house or usual place of abode, delivery on the individual's authorized agent, or pursuant to the laws of the State of Kansas.  Kansas law provides for service upon individuals as follows:

> service of process . . . shall be made . . . [u]pon an individual . . . by serving the individual or by serving an agent authorized by appointment or by law to receive service of process. . . . Service by return receipt delivery shall be addressed to an individual at the individual's dwelling house or usual place of abode and to an authorized agent at the agent's usual or designated address.  If service by return receipt delivery to the individual's dwelling house or usual place of abode is refused or unclaimed, the sheriff,

party or party's attorney seeking service may complete service by certified mail, restricted delivery, by serving the individual at a business address after filing a return on service stating the return receipt delivery to the individual at such individual's dwelling house or usual place of abode has been refused or unclaimed and a business address is known for such individual.

K.S.A. § 60-304(a).

The record reflects that plaintiff first attempted service on Lynch on May 1, 2007 by placing the summons and complaint "under locked door in [Lynch's] office [at 2858 SW Villa West Dr., Suite 104, Topeka, KS 66614] as per [her] request."  Return Of Service, attached as Exhibit 1 to Lynch's Memorandum (Doc. #32).  Plaintiff argues that his process server arranged to meet Lynch at her office on several occasions, but that Lynch did not show up as arranged and that she eventually instructed the process server to leave the summons and complaint under her locked office door.  This attempt at service does not constitute personal service or otherwise comport with Rule 4(e) or Kansas law.[10]  Even if Lynch had instructed the process server to leave the summons and complaint under her office door, plaintiff cites no authority for the proposition that the process server may deviate from the rules of service at the direction of a defendant.[11]  The Court finds this attempted service insufficient.

----

[10]     The contours of personal service may be expanded where defendant intentionally evades service.  See 4A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1095 (3d ed. 2002) (face to face encounter and hand delivery not necessary where defendant attempts to evade service; in such cases, process server need only touch defendant with papers or leave papers in defendant's proximity); K.S.A. § 60-303(d)(4) (where defendant refuses to accept service, process server's offer to deliver service and defendant's refusal sufficient).  Here, the record does not suggest that Lynch refused to accept service or otherwise attempted to evade the process server.  The Court therefore will not liberally construe personal service in this case.

[11]     The record does not suggest that Lynch waived formal service of process.  Under the Federal Rules of Civil Procedure, a defendant may waive formal service of process by executing a waiver of process and returning the waiver to plaintiff.  See Fed. R. Civ. P. 4(d).  To effect such a waiver, plaintiff must file the executed waiver with the Court.  See Bernard v. Husky Truck Stop, 45 F.3d 439 (Table), 1995 WL 4087, at *1 (10th Cir. Jan. 6, 1995) (compliance with Rule 4(d) requires
(continued...)

The record reflects that plaintiff made a second attempt to serve Lynch on June 26, 2007, by certified mail addressed to "2858 Villa West Drive, Ste 104, Topeka, KS 66614." Return Of Service, attached as Exhibit 2 to Lynch's Memorandum (Doc. #32). Sarah Schmidtlein – secretary for the landlord of the building at that address – signed for the summons. Schmidtlein was not authorized to accept service on Lynch's behalf. Lynch's business address until May 31, 2007, was 2858 Villa West Drive, Suite 104, Topeka, KS 66614, but she never lived there. Because Schmidtlein was not authorized to receive service on behalf of Lynch and 2858 Villa West Drive, Suite 104, Topeka, KS 66614 was not Lynch's dwelling house, usual place of abode or business address when plaintiff attempted service in June of 2007, the service is insufficient under Rule 4(e) and Kansas law.[12]

Generally, when the Court finds that service is insufficient but curable, it should quash service and give plaintiff an opportunity to re-serve defendant. See Gregory v. U.S. Bankr. Court, 942 F.2d

---

[11](...continued)

plaintiff to file waiver with court). Here, the record contains no evidence that Lynch executed a waiver of service and plaintiff has not filed any such waiver with the Court.

The Kansas Rules of Civil Procedure do not include a similar rule by which a defendant may formally waive service of process, but they provide that an entry of appearance has the same effect as service. See K.S.A. § 60-203(c). Despite the broad language of this rule, however, "Kansas law clearly establishes that the defense of insufficient service is preserved when raised by an answer or a motion." Carrow v. State, 121 P.3d 1003 (Table), 2005 WL 2840332, at *3 (Kan. Ct. App. Oct. 28, 2005). Here, although counsel entered an appearance on her behalf on September 27, 2007, Lynch included her argument with regard to insufficient service of process in the motion to dismiss which she filed the same day. She therefore preserved the defense under Kansas law. Because Lynch has not formally waived service of process under the Federal Rules of Civil Procedure and has preserved her defense of insufficient service under Kansas law, the Court finds that plaintiff must comply with some prescribed method of service.

[12]      Under Rule 55(a), plaintiff asks the Court to enter default against Lynch for failure to timely answer the complaint. Because a party has no duty to plead until properly served, sufficient service of process is a prerequisite to entry of default. See Peterson v. Carbon County, 156 F.3d 1244 (Table), 1998 WL 458555, at *4 (10th Cir. Aug. 6, 1998). Having found plaintiff's attempted service on Lynch insufficient, the Court overrules his motion for entry of default.

1498, 1500 (10th Cir. 1991), cert. denied, 504 U.S. 941 (1992); Pell v. Azar Nut Co., 711 F.2d 949, 950 n.2 (10th Cir. 1983).  Therefore, on or before **February 8, 2008**, plaintiff may re-serve Lynch pursuant to Rule 4 of the Federal Rules of Civil Procedure.

The Court also notes that for substantially the reasons described above with respect to Mariani, the complaint does not appear to state a conspiracy claim against Lynch.  The Court therefore orders plaintiff to show good cause in writing on or before **February 8, 2008**, why it should not dismiss for failure to state a claim his conspiracy claim against Lynch.

## IV.    Plaintiff's Claim Against Immenschuh

Plaintiff claims that in violation of Kansas law, Immenschuh defamed him by telling the Holton chief of police and the Jackson County Attorney that he was "on drugs and capable of murder." Immenschuh argues that she is entitled to judgment on the pleadings because (1) the Court lacks subject matter jurisdiction and (2) the complaint does not state a claim for defamation.

### A.    Subject Matter Jurisdiction

Immenschuh argues that defamation is a state law cause of action, and that the complaint does not allege jurisdiction over such claim.  Courts may exercise jurisdiction only when specifically authorized to do so, see Castaneda v. INS, 23 F.3d 1576, 1580 (10th Cir. 1994), and must "dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." Scheideman v. Shawnee County Bd. of County Comm'rs, 895 F. Supp. 279, 280 (D. Kan. 1995) (citing Basso v. Utah Power & Light Co., 495 F.2d 906, 909 (10th Cir. 1974)); Fed. R. Civ. P. 12(h)(3). Because federal courts are courts of limited jurisdiction, the law imposes a presumption against jurisdiction.  Marcus v. Kan. Dep't of Revenue, 170 F.3d 1305, 1309 (10th Cir. 1999).  Where plaintiff proceeds *pro se*, however, the failure to allege a sufficient basis for jurisdiction is not necessarily fatal

to his claim.  See Oltremari v. Kan. Soc. & Rehabilitative Serv., 871 F. Supp. 1331, 1333-34 (D. Kan. 1994) (because courts liberally construe *pro se* pleadings, failure to set forth clear and particularized jurisdictional allegation not fatal).  In such cases, the Court must look beyond the summary statement of the untutored plaintiff and examine whether it in fact has subject matter jurisdiction over the claim. Id.

As noted above, plaintiff asserts federal question jurisdiction under Section 1331, civil rights jurisdiction under Section 1343 and declaratory judgment jurisdiction under Section 2202. Section 1331 authorizes jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  As explained above, the Court does not construe plaintiff's defamation as one arising under federal law, and the claim therefore does not fall under Section 1331.

Section 1343 authorizes jurisdiction over certain civil rights claims, but does not create any independent substantive cause of action.  See 28 U.S.C. § 1343; Lewis v. Stevenson, 123 Fed. Appx. 885, 886 (10th Cir. 2005) (Section 1343 merely jurisdictional statute and does not create cause of action).  Because plaintiff's defamation claim does not assert a cognizable claim for violation of his civil rights, Section 1343 cannot confer jurisdiction over the claim.

Section 2202 permits courts to order declaratory relief, but does not independently confer jurisdiction on federal courts.  See Prier v. Steed, 456 F.3d 1209, 1212 (10th Cir. 2006) (Section 2202 enlarges range of available remedies but does not constitute independent basis of jurisdiction).  By itself, then, Section 2202 cannot bestow jurisdiction over plaintiff's defamation claim.

Although plaintiff has not alleged any statute which confers jurisdiction over his defamation claim against Immenschuh, the Court notes that it may exercise supplemental jurisdiction over state law claims which derive from a common nucleus of operative fact with asserted federal claims.  See

-19-

28 U.S.C. § 1367(a) ("district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy"); City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 164-65 (1997) (federal and state law claims which arise from common nucleus of operative facts permit conclusion that entire action constitutes single case); United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966) (assuming substantiality of federal issues, supplemental jurisdiction authorizes federal court to hear all claims which would ordinarily be expected to be tried in one judicial proceeding). Here, plaintiff alleges that the defamation occurred within the context of the child custody dispute between McDougal-Fisher and himself. Specifically, he alleges that Immenschuh and McDougal-Fisher formed a significant personal and professional relationship and that by impugning his reputation, Immenschuh's defamatory statement was designed help McDougal-Fisher obtain sole custody of K.F. through the order of direct custody which forms the basis of the Section 1983 claim asserted in Count I. Because plaintiff's defamation claim is intertwined with the conduct of other defendants underlying his Section 1983 claim, the two claims share a sufficient set of operative facts under Section 1367(a) such that the Court may exercise supplemental jurisdiction over the defamation claim. See Busey v. Bd. of County Comm'rs of County of Shawnee, Kan., 163 F. Supp.2d 1291, 1294 (D. Kan. 2001) (claims linked to same events sufficient for supplemental jurisdiction). Accordingly, the motion on this ground is overruled.

      B.      Failure To State A Claim

      Immenschuh argues that the complaint does not state a claim for defamation because it does not identify the persons to whom she allegedly made the defamatory comments. To state a claim for defamation under Kansas law, plaintiff must allege (1) false and defamatory words; (2) communicated to a third person; (3) which resulted in harm to his reputation. See Hall v. Kan. Farm Bureau, 274 Kan.

263, 276, 50 P.3d 495, 504 (2002).  In practice, defamation claims present a "significant exception" to general liberal pleading standards because defamation constitutes a "traditionally disfavored" cause of action.  Bushnell Corp. v. ITT Corp., 973 F. Supp. 1276, 1287 (D. Kan. 1997).  To sufficiently plead a defamation claim, the complaint must allege the defamatory words, the communicator of those words, the persons to whom those words were published and the time and place of publication.  See id.; Marten v. Yellow Freight Sys., Inc., 993 F. Supp. 822, 829 (D. Kan. 1998); see also Jackson v. Kan. County Ass'n Multiline Pool, No. 03-4181, 2006 WL 963838, at *21 (D. Kan. Apr. 10, 2006).

As noted above, plaintiff alleges that Immenschuh made her statements to "the Holton City Chief of Police and the count[y] attorney of Jackson County."  Complaint (Doc. #1) filed April 17, 2007 ¶ 57.  Although this allegation does not identify by name the chief of police or county attorney, those positions are presumably filled by only one person at a time.  It should not be difficult to identify the Holton chief of police and Jackson County attorney in September of 2006 when Immenschuh allegedly made her statements.  Immenschuh does not complain that plaintiff's allegations are otherwise defective.  The Court therefore finds that plaintiff's allegations are sufficient to state a defamation claim, and Immenschuh's motion on that ground is overruled.

**IT IS THEREFORE ORDERED** that Defendant Mariani's Motion For Judgment On The Pleadings (Doc. #14) filed July 20, 2007 be and hereby is **SUSTAINED**.

**IT IS FURTHER ORDERED** that Defendant Kristie D. Fisher's Motion For Judgment On The Pleadings (Doc. #19) filed August 2, 2007 be and hereby is **SUSTAINED**.

**IT IS FURTHER ORDERED** that the Motion By Defendant Landee Lynch To Dismiss The Above Cause For Insufficiency Of Process And Insufficiency Of Service Of Process (Doc. #31) filed September 27, 2007 be and hereby is **SUSTAINED IN PART**.  The Court quashes plaintiff's service

on Lynch and grants plaintiff until **February 8, 2008**, to properly re-serve Lynch under Rule 4 of the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED that plaintiff shall show good cause in writing on or before February 8, 2008, why the Court should not dismiss for failure to state a claim his conspiracy claim against Lynch.**

**IT IS FURTHER ORDERED** that plaintiff's <u>Motion For Entry Of Default Judgment</u> (Doc. #29) filed September 25, 2007 be and hereby is **OVERRULED**.

**IT IS FURTHER ORDERED** that the <u>Defendant Joyce Immenschuh's Motion For Judgment On The Pleadings</u> (Doc. #11) filed July 3, 2007 be and hereby is **OVERRULED**.

**IT IS FURTHER ORDERED that plaintiff shall show good cause in writing on or before February 8, 2008, why the Court should not dismiss for failure to state a claim his claims against the John Doe defendants.**

Pending resolution of the show cause orders and assuming plaintiff properly effects service of process on Lynch, the following claims remain in the case: (1) under Section 1983, the First, Fourth and Fourteenth Amendment claims against Lynch regarding the ex parte order (Count I); (2) under Section 1985(3), the conspiracy claim against Lynch (Count II); (3) under Kansas law, the defamation claim against Immenschuh (Count III); (4) under Section 1983, the First, Fourth, Thirteenth and Fourteenth Amendment claims against Lynch, Davis, NEK-CAP and Head Start regarding K.F.'s mandatory daycare attendance (Count IV); and (5) the claims against the John Doe defendants.

Dated this 22nd day of January, 2008 at Kansas City, Kansas.

<u>s/ Kathryn H. Vratil</u>
Kathryn H. Vratil
United States District Judge

-22-