**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

```
RAMON FISHER,                              )
Individually as Father                     )
and Next Friend of Minor, K.F.,            )
                                           )
                    Plaintiff,             )
                                           )       CIVIL ACTION
v.                                         )
                                           )       No. 07-2154-KHV
LANDEE LYNCH, et al.,                      )
                                           )
                    Defendants.            )
_____)
```

## MEMORANDUM AND ORDER

Ramon Fisher, *pro se*, brings suit against NEK-CAP, Inc. ("NEK-CAP"), NEK-CAP Headstart ("Head Start"), Deb Davis and Joyce Immenschuh. Under 42 U.S.C. § 1983, plaintiff alleges that NEK-CAP, Head Start and Davis violated his rights and the rights of his daughter under the Thirteenth Amendment. Under Kansas law, plaintiff alleges that Immenschuh defamed him. This matter comes before the Court on the Motion For Summary Judgment Of The NEK-CAP And Davis Defendants (Doc. #77) filed May 27, 2008, and the Motion For Summary Judgment Or, Alternatively, Request For Declination Of Supplemental Jurisdiction Of Defendant Joyce Immenschuh (Doc. #80) filed June 13, 2008. For reasons stated below, the Court sustains the motions.

## Legal Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving parties are entitled to a judgment as a matter of law. See Fed. R. Civ. P. 56(c); accord Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Vitkus v. Beatrice Co.,

11 F.3d 1535, 1538-39 (10th Cir. 1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. A "genuine" factual dispute requires more than a mere scintilla of evidence. Id. at 252.

The moving parties bear the initial burden of showing the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hicks v. City of Watonga, 942 F.2d 737, 743 (10th Cir. 1991). Once the moving parties meet this burden, the nonmoving party must demonstrate that genuine issues remain for trial "as to those dispositive matters for which [he] carries the burden of proof." Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991). The nonmoving party may not rest on his pleadings but must set forth specific facts. Applied Genetics, 912 F.2d at 1241.

The Court must view the record in a light most favorable to the party opposing the motion for summary judgment. Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir. 1991). Summary judgment may be granted if the nonmoving party's evidence is merely colorable or is not significantly probative. Anderson, 477 U.S. at 250-51. "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988).

**Factual Background**

The following material facts are uncontroverted, deemed admitted or, where disputed, viewed

in the light most favorable to plaintiff, the nonmoving party:[1]

K.F. is the minor daughter of plaintiff and Kristie D. McDougal-Fisher. For several years, plaintiff and McDougal-Fisher have been engaged in a child custody dispute involving K.F.

Joyce Immenschuh is an office manager in the Jackson County, Kansas attorney's office. On September 29, 2006, while in the county attorney's office, Immenschuh stated that plaintiff was "on drugs and capable of murder." Linda Handley, plaintiff's wife, heard the statement. David J. Lanning, Holton, Kansas chief of police, was present in the county attorney's office on that day, but did not hear Immenschuh make the statement. Kristie Hildebrand, Jackson County attorney, was also present, but the record does not reveal whether she heard the statement. Plaintiff believes that the statement is stigmatizing because "every time the Chief of Police sees [plaintiff], he probably thinks about it." Plaintiff has no evidence that the statement has been repeated within the community.

In the fall of 2006, the District Court of Jackson County, Kansas entered an ex parte order which granted McDougal-Fisher direct custody of K.F. and named her the primary residential parent. In a memorandum of understanding, plaintiff and McDougal-Fisher agreed to a co-parenting schedule which allowed K.F. to attend NEK-CAP's Head Start daycare facility at no cost. The ex parte order

---

[1] D. Kan. Rule 56.1 requires the parties to provide concise statements of uncontroverted material facts which are supported by citations to the record. See D. Kan. Rule 56.1(a)-(b). NEK-CAP, Head Start and Davis incorporate facts in the argument section of their memorandum which are not set forth in the statement of uncontroverted facts. The Court ignores these facts. See Green v. Reddy, 918 F. Supp. 329, 333 (D. Kan. 1996) (disregarding facts located elsewhere than in statement of uncontroverted facts). The Court also ignores plaintiff's statement of facts to the extent that the facts are not supported by citations to the record. See Ogden v. San Juan County, 32 F.3d 452, 455 (10th Cir. 1994) (*pro se* status does not excuse obligation of any litigant to comply with procedural rules).

As necessary for clarification, the Court supplements the factual background with facts taken from plaintiff's complaint, which he filed under oath. See Hall v. Bellmon, 935 F.2d 1106, 1111 (10th Cir. 1991) (complaint treated as affidavit to extent it alleges facts based on plaintiff's personal knowledge and is sworn under penalty of perjury).

incorporated case manager recommendations which restrained plaintiff from entering Head Start, visiting K.F. while she attended the daycare facility, and picking her up from the daycare facility. On two occasions – once on December 26, 2006, and again on May 8, 2007 – Head Start manager Deb Davis refused to release K.F. to plaintiff when he attempted to pick her up from the daycare facility. At some point in 2007, plaintiff made arrangements for K.F. to attend another daycare facility, but McDougal-Fisher refused to take K.F. to that facility.

Plaintiff claims that Immenschuh defamed him. Plaintiff claims that NEK-CAP, Head Start and Davis violated his rights and the rights of K.F. under the Thirteenth Amendment by compelling K.F. to attend the Head Start daycare facility and refusing to let him remove K.F. from the daycare on December 26, 2006, and May 8, 2007. Defendants seek summary judgment on these claims.

## Analysis

### I.     Plaintiff's Claim Against Joyce Immenschuh

As noted above, plaintiff claims that Immenschuh defamed him by stating that he was "on drugs and capable of murder." Immenschuh argues that she is entitled to summary judgment because the record contains no evidence of damage to plaintiff's reputation.

Under Kansas law, defamation consists of false and defamatory words, communicated to a third person, which result in harm to the reputation of the person defamed. Hall v. Kan. Farm Bureau, 274 Kan. 263, 276, 50 P.3d 495, 504 (2002). In Gobin v. Globe Publishing Co., 232 Kan. 1, 649 P.2d 1239 (1982), the Kansas Supreme Court explained that

> [D]amage to one's reputation is the essence and gravamen of an action for defamation. Unless injury to reputation is shown, plaintiff has not established a valid claim for defamation . . . under our law. It is reputation which is defamed, reputation which is injured, reputation which is protected by the laws of libel and slander.

Id. at 6, 649 P.2d at 1243. Generally, plaintiff may demonstrate damage to his reputation with

evidence that persons were deterred from associating with him, that his reputation was lowered in the community, or that his profession suffered. Hunter v. Buckle, Inc., 488 F. Supp.2d 1157, 1178 (D. Kan. 2007).

Here, the record contains no evidence of harm to reputation which plaintiff suffered as a result of Immenschuh's statement. Although Handley heard the statement, the record contains no evidence that she was deterred from associating with plaintiff – who is her husband – because of the statement. The record does not indicate that any other person heard the statement and thereafter refused to associate with plaintiff. The record contains no evidence that the statement affected plaintiff's reputation in the community or caused his profession to suffer. Plaintiff's speculation that Lanning thinks less of him is debunked by Lanning's testimony that he did not hear the statement and, in any event, is insufficient to support the defamation claim. See id. (speculation that someone must have believed statement immaterial without evidence that bystander had personal knowledge of plaintiff's reputation). On this record, the Court finds no genuine issue whether plaintiff suffered reputational harm from Immenschuh's statement.

Plaintiff argues that he need not prove actual harm to his reputation because the statement constitutes defamation per se from which damages may be presumed. Under Kansas law, however, "[d]amages recoverable for defamation, whether per se or not, [can] no longer be presumed but must be proven." Moran v. State, 267 Kan. 583, 599, 985 P.2d 127, 138 (1999); see also Polson v. Davis, 895 F.2d 705, 708 (1990) (Gobin abolished distinction between defamation per se and defamation per quod). In other words, to survive summary judgment, plaintiff must show actual damage to his reputation. See Hall, 274 Kan. at 278, 50 P.3d at 505 (absent evidence of harm to reputation, plaintiff cannot establish essential element of defamation claim and summary judgment is appropriate).

Because he has not done so, the Court finds that Immenschuh is entitled to summary judgment.

**II.     Plaintiff's Claim Against NEK-CAP, Head Start and Davis**

As noted above, plaintiff claims that NEK-CAP, Head Start and Davis violated his Thirteenth Amendment rights and those of K.F. by compelling K.F. to attend the Head Start daycare facility and refusing to let him remove K.F. from the daycare on December 26, 2006, and May 8, 2007. To recover on a claim under Section 1983, plaintiff must prove that defendants deprived him of a constitutional right and that they acted under color of state law in doing so. Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970). Defendants argue that they are entitled to summary judgment because they did not deprive plaintiff of a constitutional right and, even if they did, they did not act under color of state law in doing so.

     A.     Violation Of The Thirteenth Amendment

The Thirteenth Amendment to the United States Constitution provides that "[n]either slavery nor involuntary servitude . . . shall exist within the United States." U.S. Const. amend. XIII, § 1. With regard to the application of this prohibition, the Supreme Court has explained that "[t]his Amendment was adopted with reference to conditions existing since the foundation of our government, and the term 'involuntary servitude' was intended to cover those forms of compulsory labor akin to African slavery which, in practical operation, would tend to produce like undesirable results." Butler v. Perry, 240 U.S. 328, 332 (1916). In other words, the Thirteenth Amendment prohibits "compulsion through physical coercion," where the victim has no available choice but to work or be subject to legal sanction. United States v. Kozminski, 487 U.S. 931, 942-43 (1988).

The facts of this case do not implicate the prohibition against involuntary servitude. Generally, the Thirteenth Amendment was not intended to apply to cases involving "the right of

parents and guardians to the custody of their minor children or wards." Id. at 944 (quoting Robertson v. Baldwin, 165 U.S. 275, 282 (1897)); see also S.U. v. Youth Care Ctr. of Utah, Inc., 345 F. Supp.2d 1269, 1271 (D. Utah 2004) (Thirteenth Amendment does not apply in action against treatment facility which limited institutionalized minor's contact with outside persons). Moreover, even if the Thirteenth Amendment did apply, plaintiff has not demonstrated that he and his daughter were subject to anything akin to African slavery. On the two occasions when Davis refused to release K.F. to plaintiff, she acted in conformity with the state court order. The Court finds no support for the argument that Davis refused to release K.F. as a means of forced labor. The record indicates that the co-parenting schedule allowed K.F. to attend Head Start at no cost, but it does not suggest that defendants compelled K.F. to attend the daycare facility through coercive measures. In fact, the record contains evidence that in 2007, plaintiff was able to make alternate daycare arrangements for K.F. Although plaintiff's ex-wife did not honor the alternate arrangement, this evidence reflects an availability of choices which belies the involuntary servitude claim. On this record, the Court finds no genuine issue of material fact whether defendants subjected plaintiff and K.F. to involuntary servitude in violation of the Thirteenth Amendment, and NEK-CAP, Head Start and Davis are therefore entitled to summary judgment.

      B.      Action Under Color Of State Law

Even if plaintiff had demonstrated a constitutional violation, defendants are not liable under Section 1983 unless they acted under color of state law. Traditionally, in order to act under color of state law for purposes of Section 1983, a defendant must have "exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." How v. City of Baxter Springs, 217 Fed. Appx. 787, 792 (10th Cir. 2007) (quoting West v. Atkins,

487 U.S. 42, 49 (1988)) (internal quotations omitted).  Plaintiff argues that defendants acted under color of state law by conspiring with state officials to violate his constitutional rights.

To prove that private individuals acted under color of state law for purposes of Section 1983, plaintiff may demonstrate that they conspired with public actors to accomplish a common, unconstitutional goal.  Sigmon v. CommunityCare HMO, Inc., 234 F.3d 1121, 1126 (10th Cir. 2000). Where plaintiff alleges conduct under color of state law by implicating state officials in a conspiracy with private defendants, "mere conclusory allegations with no supporting factual averments are insufficient; the pleadings must specifically present facts tending to show agreement and concerted action."  Raiser v. Kono, 245 Fed. Appx. 732, 736 (10th Cir. 2007) (quoting Sooner Prods. Co. v. McBride, 708 F.2d 510, 512 (10th Cir. 1983)).  Here, the record contains no evidence of a conspiracy.  Plaintiff does not identify any state official with whom defendants conspired, nor does he present evidence of an agreement and concerted action to violate the constitution.  On this record, the Court finds no genuine issue of material fact whether defendants acted under color of state law for purposes of Section 1983, and NEK-CAP, Head Start and Davis are therefore entitled to summary judgment.

**IT IS THEREFORE ORDERED** that the Motion For Summary Judgment Of The NEK-CAP And Davis Defendants (Doc. #77) filed May 27, 2008 be and hereby is **SUSTAINED**.

**IT IS FURTHER ORDERED** that the Motion For Summary Judgment Or, Alternatively, Request For Declination Of Supplemental Jurisdiction Of Defendant Joyce Immenschuh (Doc. #80) filed June 13, 2008 be and hereby is **SUSTAINED**.

Dated this 11th day of August, 2008 at Kansas City, Kansas.

s/ Kathryn H. Vratil<br>
Kathryn H. Vratil<br>
United States District Judge